# SUPREME COURT OF THE UNITED STATES

_____

### No. 21A24

_____

## WHOLE WOMAN'S HEALTH ET AL. *v.* AUSTIN REEVE JACKSON, JUDGE, ET AL.

### ON APPLICATION FOR INJUNCTIVE RELIEF

### [September 1, 2021]

The application for injunctive relief or, in the alternative, to vacate stays of the district court proceedings presented to JUSTICE ALITO and by him referred to the Court is denied. To prevail in an application for a stay or an injunction, an applicant must carry the burden of making a "strong showing" that it is "likely to succeed on the merits," that it will be "irreparably injured absent a stay," that the balance of the equities favors it, and that a stay is consistent with the public interest. *Nken* v. *Holder*, 556 U. S. 418, 434 (2009); *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 141 S. Ct. 63, 66 (2020) (citing *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. 7, 20 (2008)). The applicants now before us have raised serious questions regarding the constitutionality of the Texas law at issue. But their application also presents complex and novel antecedent procedural questions on which they have not carried their burden. For example, federal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves. *California* v. *Texas*, 593 U. S. ___, ___ (2021) (slip op., at 8). And it is unclear whether the named defendants in this lawsuit can or will seek to enforce the Texas law against the applicants in a manner that might permit our intervention. *Clapper* v. *Amnesty Int'l USA*, 568 U. S. 398, 409 (2013) ("threatened injury must be *certainly impending*" (citation omitted)). The State has represented

that neither it nor its executive employees possess the authority to enforce the Texas law either directly or indirectly. Nor is it clear whether, under existing precedent, this Court can issue an injunction against state judges asked to decide a lawsuit under Texas's law. See *Ex parte Young*, 209 U. S. 123, 163 (1908). Finally, the sole private-citizen respondent before us has filed an affidavit stating that he has no present intention to enforce the law. In light of such issues, we cannot say the applicants have met their burden to prevail in an injunction or stay application. In reaching this conclusion, we stress that we do not purport to resolve definitively any jurisdictional or substantive claim in the applicants' lawsuit. In particular, this order is not based on any conclusion about the constitutionality of Texas's law, and in no way limits other procedurally proper challenges to the Texas law, including in Texas state courts.

CHIEF JUSTICE ROBERTS, with whom JUSTICE BREYER and JUSTICE KAGAN join, dissenting.

The statutory scheme before the Court is not only unusual, but unprecedented. The legislature has imposed a prohibition on abortions after roughly six weeks, and then essentially delegated enforcement of that prohibition to the populace at large. The desired consequence appears to be to insulate the State from responsibility for implementing and enforcing the regulatory regime.

The State defendants argue that they cannot be restrained from enforcing their rules because they do not enforce them in the first place. I would grant preliminary relief to preserve the status quo ante—before the law went into effect—so that the courts may consider whether a state can avoid responsibility for its laws in such a manner. Defendants argue that existing doctrines preclude judicial intervention, and they may be correct. See *California* v. *Texas*, 593 U. S. ___, ___ (2021) (slip op., at 8). But the con-

sequences of approving the state action, both in this particular case and as a model for action in other areas, counsel at least preliminary judicial consideration before the program devised by the State takes effect.

We are at this point asked to resolve these novel questions—at least preliminarily—in the first instance, in the course of two days, without the benefit of consideration by the District Court or Court of Appeals. We are also asked to do so without ordinary merits briefing and without oral argument. These questions are particularly difficult, including for example whether the exception to sovereign immunity recognized in *Ex parte Young*, 209 U. S. 123 (1908), should extend to state court judges in circumstances such as these.

I would accordingly preclude enforcement of S. B. 8 by the respondents to afford the District Court and the Court of Appeals the opportunity to consider the propriety of judicial action and preliminary relief pending consideration of the plaintiffs' claims.

Although the Court denies the applicants' request for emergency relief today, the Court's order is emphatic in making clear that it cannot be understood as sustaining the constitutionality of the law at issue. But although the Court does not address the constitutionality of this law, it can of course promptly do so when that question is properly presented. At such time the question could be decided after full briefing and oral argument, with consideration of whether interim relief is appropriate should enforcement of the law be allowed below.

# SUPREME COURT OF THE UNITED STATES

———————

No. 21A24

———————

## WHOLE WOMAN'S HEALTH ET AL. *v.* AUSTIN REEVE JACKSON, JUDGE, ET AL.

### ON APPLICATION FOR INJUNCTIVE RELIEF

[September 1, 2021]

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting.

The procedural posture of this case leads a majority of this Court to deny the applicants' request for provisional relief. In my view, however, we should grant that request.

I agree with THE CHIEF JUSTICE, JUSTICE SOTOMAYOR, and JUSTICE KAGAN. Texas's law delegates to private individuals the power to prevent a woman from obtaining an abortion during the first stage of pregnancy. But a woman has a federal constitutional right to obtain an abortion during that first stage. *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833, 846 (1992)*; Roe* v. *Wade*, 410 U. S. 113, 164 (1973). And a "State cannot delegate . . . a veto power [over the right to obtain an abortion] which the state itself is absolutely and totally prohibited from exercising during the first trimester of pregnancy." *Planned Parenthood of Central Mo.* v. *Danforth*, 428 U. S. 52, 69 (1976) (internal quotation marks omitted). Indeed, we have made clear that "since the State cannot regulate or proscribe abortion during the first stage . . . the State cannot delegate authority to any particular person . . . to prevent abortion during that same period." *Ibid.* The applicants persuasively argue that Texas's law does precisely that.

The very bringing into effect of Texas's law may well threaten the applicants with imminent and serious harm. One of the clinic applicants has stated on its website that

"[d]ue to Texas' SB 8 law," it is "unable to provide abortion procedures at this time."  Planned Parenthood South Texas, https://www.plannedparenthood.org/planned-parenthood-south-texas.  And the applicants, with supporting affidavits, claim that clinics will be unable to run the financial and other risks that come from waiting for a private person to sue them under the Texas law; they will simply close, depriving care to more than half the women seeking abortions in Texas clinics.  See, *e.g.,* App. to Application 105, 148–150, 178–179.  We have permitted those whom a law threatens with constitutional harm to bring pre-enforcement challenges to the law where the harm is less serious and the threat of enforcement less certain than the harm (and the threat) here.  See *Virginia* v. *American Booksellers Assn., Inc.*, 484 U. S. 383, 392–393 (1988); *Babbitt* v. *Farm Workers*, 442 U. S. 289, 298 (1979); see also *Susan B. Anthony List* v. *Driehaus*, 573 U. S. 149, 164 (2014) (finding substantial threat of future enforcement where statute permits "'any person'" to file a complaint and "the universe of potential complainants is not restricted").

I recognize that Texas's law delegates the State's power to prevent abortions not to one person (such as a district attorney) or to a few persons (such as a group of government officials or private citizens) but to any person.  But I do not see why that fact should make a critical legal difference.  That delegation still threatens to invade a constitutional right, and the coming into effect of that delegation still threatens imminent harm.  Normally, where a legal right is "'invaded,'" the law provides "'a legal remedy by suit or action at law.'" *Marbury* v. *Madison*, 1 Cranch 137, 163 (1803) (quoting 3 W. Blackstone Commentaries *23).  It should prove possible to apply procedures adequate to that task here, perhaps by permitting lawsuits against a subset of delegatees (say, those particularly likely to exercise the delegated powers), or perhaps by permitting lawsuits against

BREYER, J., dissenting

officials whose actions are necessary to implement the statute's enforcement powers.  There may be other not-very-new procedural bottles that can also adequately hold what is, in essence, very old and very important legal wine: The ability to ask the Judiciary to protect an individual from the invasion of a constitutional right—an invasion that threatens immediate and serious injury.

As THE CHIEF JUSTICE writes, this Court should not permit the law to take effect without assuring the applicants (and the respondents) an opportunity first and fully to make (or to refute) these and other arguments supporting the request for an injunction.

For these reasons, and for the reasons stated by THE CHIEF JUSTICE, JUSTICE SOTOMAYOR, and JUSTICE KAGAN, I dissent.

# SUPREME COURT OF THE UNITED STATES

---

### No. 21A24

---

### WHOLE WOMAN'S HEALTH ET AL. *v.* AUSTIN REEVE JACKSON, JUDGE, ET AL.

#### ON APPLICATION FOR INJUNCTIVE RELIEF

#### [September 1, 2021]

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER and JUSTICE KAGAN join, dissenting.

The Court's order is stunning. Presented with an application to enjoin a flagrantly unconstitutional law engineered to prohibit women from exercising their constitutional rights and evade judicial scrutiny, a majority of Justices have opted to bury their heads in the sand. Last night, the Court silently acquiesced in a State's enactment of a law that flouts nearly 50 years of federal precedents. Today, the Court belatedly explains that it declined to grant relief because of procedural complexities of the State's own invention. *Ante,* at 1. Because the Court's failure to act rewards tactics designed to avoid judicial review and inflicts significant harm on the applicants and on women seeking abortions in Texas, I dissent.

In May 2021, the Texas Legislature enacted S. B. 8 (the Act). The Act, which took effect statewide at midnight on September 1, makes it unlawful for physicians to perform abortions if they either detect cardiac activity in an embryo or fail to perform a test to detect such activity. §3 (to be codified at Tex. Health & Safety Code Ann. §§171.201(1), 171.204(a) (West 2021)). This equates to a near-categorical ban on abortions beginning six weeks after a woman's last menstrual period, before many women realize they are pregnant, and months before fetal viability. According to the applicants, who are abortion providers and advocates in

Texas, the Act immediately prohibits care for at least 85% of Texas abortion patients and will force many abortion clinics to close.

The Act is clearly unconstitutional under existing precedents. See, *e.g.*, *June Medical Servs. L. L. C.* v. *Russo*, 591 U. S. ___, ___ (2020) (ROBERTS, C. J., concurring in judgment) (slip op., at 5) (explaining that "the State may not impose an undue burden on the woman's ability to obtain an abortion" of a "nonviable fetus" (citing *Roe* v. *Wade*, 410 U. S. 113 (1973), and *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833 (1992); internal quotation marks omitted)). The respondents do not even try to argue otherwise. Nor could they: No federal appellate court has upheld such a comprehensive prohibition on abortions before viability under current law.

The Texas Legislature was well aware of this binding precedent. To circumvent it, the Legislature took the extraordinary step of enlisting private citizens to do what the State could not. The Act authorizes any private citizen to file a lawsuit against any person who provides an abortion in violation of the Act, "aids or abets" such an abortion (including by paying for it) regardless of whether they know the abortion is prohibited under the Act, or even intends to engage in such conduct. §3 (to be codified at Tex. Health & Safety Code Ann. §171.208). Courts are required to enjoin the defendant from engaging in these actions in the future and to award the private-citizen plaintiff at least $10,000 in "statutory damages" for each forbidden abortion performed or aided by the defendant. *Ibid.* In effect, the Texas Legislature has deputized the State's citizens as bounty hunters, offering them cash prizes for civilly prosecuting their neighbors' medical procedures.

The Legislature fashioned this scheme because federal constitutional challenges to state laws ordinarily are brought against state officers who are in charge of enforcing

the law. See, *e.g.*, *Virginia Office for Protection and Advocacy* v. *Stewart*, 563 U. S. 247, 254 (2011) (citing *Ex parte Young*, 209 U. S. 123 (1908)). By prohibiting state officers from enforcing the Act directly and relying instead on citizen bounty hunters, the Legislature sought to make it more complicated for federal courts to enjoin the Act on a statewide basis.

Taken together, the Act is a breathtaking act of defiance—of the Constitution, of this Court's precedents, and of the rights of women seeking abortions throughout Texas. But over six weeks after the applicants filed suit to prevent the Act from taking effect, a Fifth Circuit panel abruptly stayed all proceedings before the District Court and vacated a preliminary injunction hearing that was scheduled to begin on Monday. The applicants requested emergency relief from this Court, but the Court said nothing. The Act took effect at midnight last night.[*]

————————

[*] The Court's inaction has had immediate impact. Two hours before the Act took effect, one applicant reported that its waiting rooms were "'filled with patients'" urgently seeking care while "'protesters [we]re outside, shining lights on the parking [lot].'" De Vogue, Texas 6-Week Abortion Ban Takes Effect after Supreme Court Inaction, CNN (Sept. 1, 2021), www.cnn.com/2021/09/01/politics/texas-abortion-supreme-court-sb8-roe-wade/index.html. Then, at midnight, the Act became law, and many abortion providers, including applicants, ceased providing abortion care after more than six weeks from a woman's last menstrual period (LMP). See, *e.g.,* Alamo Women's Reproductive Care (Sept. 1, 2021), https://alamowomensclinic.com ("We cannot provide abortion services to anyone with detectable embryonic or fetal cardiac activity[,] which is typically found at 6 weeks or more from last menstrual period"); Southwestern Women's Surgery Center (Sept. 1, 2021), https://southwesternwomens.com/southwestern-womens-surgery-center-dallas-texas/ ("In compliance with Texas Senate Bill 8 of 2021, starting on September 1st 2021, our facility cannot provide abortions to patients with detectible embryonic or fetal cardiac activity, which typically starts at 6 weeks LMP"). Since then, at least one applicant has stopped providing abortions entirely. Planned Parenthood South Texas (Sept. 1, 2021), https://www.plannedparenthood.org/planned-parenthood-south-texas ("Due to Texas' SB 8 law, we are unable to provide abortion procedures

Today, the Court finally tells the Nation that it declined to act because, in short, the State's gambit worked. The structure of the State's scheme, the Court reasons, raises "complex and novel antecedent procedural questions" that counsel against granting the application, *ante,* at 1, just as the State intended. This is untenable. It cannot be the case that a State can evade federal judicial scrutiny by outsourcing the enforcement of unconstitutional laws to its citizenry. Moreover, the District Court held this case justiciable in a thorough and well-reasoned opinion after weeks of briefing and consideration. 2021 WL 3821062, *8–*26 (WD Tex., Aug. 25, 2021). At a minimum, this Court should have stayed implementation of the Act to allow the lower courts to evaluate these issues in the normal course. *Ante,* at 2 (ROBERTS, C. J., dissenting). Instead, the Court has rewarded the State's effort to delay federal review of a plainly unconstitutional statute, enacted in disregard of the Court's precedents, through procedural entanglements of the State's own creation.

The Court should not be so content to ignore its constitutional obligations to protect not only the rights of women, but also the sanctity of its precedents and of the rule of law.

I dissent.

––––––––––

at this time").

# SUPREME COURT OF THE UNITED STATES

No. 21A24

## WHOLE WOMAN'S HEALTH ET AL. *v.* AUSTIN REEVE JACKSON, JUDGE, ET AL.

### ON APPLICATION FOR INJUNCTIVE RELIEF

[September 1, 2021]

JUSTICE KAGAN, with whom JUSTICE BREYER and JUSTICE SOTOMAYOR join, dissenting.

Without full briefing or argument, and after less than 72 hours' thought, this Court greenlights the operation of Texas's patently unconstitutional law banning most abortions. The Court thus rewards Texas's scheme to insulate its law from judicial review by deputizing private parties to carry out unconstitutional restrictions on the State's behalf. As of last night, and because of this Court's ruling, Texas law prohibits abortions for the vast majority of women who seek them—in clear, and indeed undisputed, conflict with *Roe* and *Casey*.

Today's ruling illustrates just how far the Court's "shadow-docket" decisions may depart from the usual principles of appellate process. That ruling, as everyone must agree, is of great consequence. Yet the majority has acted without any guidance from the Court of Appeals—which is right now considering the same issues. It has reviewed only the most cursory party submissions, and then only hastily. And it barely bothers to explain its conclusion—that a challenge to an obviously unconstitutional abortion regulation backed by a wholly unprecedented enforcement scheme is unlikely to prevail. In all these ways, the majority's decision is emblematic of too much of this Court's shadow-docket decisionmaking—which every day becomes more un-

KAGAN, J., dissenting

reasoned, inconsistent, and impossible to defend.  I respect-
fully dissent.